[L. A. No. 8395. In Bank.—September 11, 1925.]

In the Matter of the Estate of SUSAN MARY GOWAN JOHNSTON, Deceased.

[1] WILLS—CHARITABLE BEQUEST BY WIFE—CONSENT OF HUSBAND—WAIVER OF BENEFITS OF SECTION 1313, CIVIL CODE—SUBSEQUENT CHANGE OF BENEFICIARY.—Where a wife makes a will disposing of all her estate, leaving more than one-third thereof to a specified charitable beneficiary, and following the attestation clause the husband executes a statement to the effect that he has been made fully acquainted with the provisions of the will and, being fully advised, consents to the same and the whole thereof, such consent does not constitute a general waiver of the rights and benefits secured to heirs by the provisions of section 1313 of the Civil Code, so as to entitle the wife thereafter, by codicil, to revoke such charitable bequest and leave more than one-third of her estate to an entirely different charitable beneficiary, without obtaining a waiver by her husband of the restrictions of said code section.

[2] ID.—BEQUEST TO COUNTY HOSPITAL—EXCEPTION TO SECTION 1313, CIVIL CODE, NOT APPLICABLE.—A county hospital is not a state institution; and a bequest to a county hospital is not a bequest "to the state, or to any state institution, or for the use or benefit of the state, or state institution," so as to come within the exception to the provisions of section 1313 of the Civil Code.

(1) 40 Cyc., p. 1057, n. 99.   (2) 40 Cyc., p. 1053, n. 82.

APPEAL from a decree of the Superior Court of San Diego County directing distribution. W. P. Cary, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. C. Kempley, Albert J. Lee and W. A. Sloane for Appellant.

Haines & Haines and Hamilton & Lindley for Respondent.

LAWLOR, Acting C. J.—The decedent above named died testate on November 1, 1922, at La Mesa, in the county of San Diego, being a resident of and leaving estate in said

2. See 5 Cal. Jur. 8.

county.  The will of said decedent was admitted to probate in the superior court of the county of San Diego on December 18, 1922, and the Southern Trust and Commerce Bank, named therein as such, was duly appointed executor of said will.  Christopher J. Johnston, the husband of the decedent, survived her but has, since her death, been adjudged incompetent; one Lincoln McMillan being the legally appointed guardian of his person and estate.  By her will the decedent disposed of all her estate to the Southern Trust and Commerce Bank of San Diego in trust for the benefit of her husband.  After specifying the trust upon which the trustee named was to hold the estate the will proceeded as follows:

"Item 4: After the decease of my husband, if he survives me, or if he should not survive me, and the said trust for him does not take effect, I direct my said trustee to dispose of the said trust estate and close this trust as follows: [Then follow numerous specific legacies to be paid by the trustee] (f) the remainder and residue of the said trust estate, after payment of all expenses of closing the trust, I direct, my said trustee to pay over to the Fredericka Home for the Aged, at Chula Vista, California, a corporation organized under the laws of said state, to be used by it to create an endowment fund for said Home to be known as the 'Gowan-Johnston Endowment Fund,' the principal of which shall be maintained intact, and the income from which shall be devoted to the support and general purposes and needs of said Home. . . . "

Following the attestation clause of the will the husband of the decedent signed on the same day the will was executed the following statement: "I, the undersigned Christopher J. Johnston, having been made fully acquainted with the above and foregoing Will of my wife Susan Mary Gowan Johnston, and being fully advised, do hereby consent to the same and the whole thereof."

At a later date, to wit, June 26, 1922, a codicil in these terms was added to the will by the decedent: "I, Susan Mary Gowan Johnston hereby revoke and cancel the bequest to the Fredericka Home for the Aged as written herein, and all relating to it. ——— . . . And I further name and appoint the San Diego County Hospital as Residuary Legatee under this Codicil of June 26, 1922—And direct that the funds obtained from the residue of my estate be used for the pur-

pose of a special ward or building for the necessary care and treatment of patients who prefer to pay for Hospital services rather than accept charity, the fees to be moderate and within the means of working people to pay, while the care and treatment of such patients to be of the best.''

A petition for final distribution was seasonably filed. Objections on behalf of the county of San Diego to the distribution of the estate as prayed for in the petition were filed by the district attorney of that county. The court, on July 11, 1924, made its decree in accordance with the petition. After providing for the trust created by the will and setting forth directions to guide the trustee in the conduct thereof, the decree of distribution declared, in part: ''6. It is further ordered, adjudged and decreed, and this does order, adjudge and decree that if and to the extent that the effect of the codicil to the will of said Susan Mary Gowan Johnston, also known as Susan M. Johnston, deceased, set out in the Finding numbered 6 of the said Findings of Fact and Conclusions of Law heretofore filed herein, results in a devise and bequest, or devise or bequest, to charities or in trust for charitable uses, which collectively exceed one-third of the net distributable estate of the testatrix, such disposition to charitable purposes in excess of one-third of the distributable estate of said testatrix is null and void and a violation of Section 1313 of the Civil Code of California, and that to that extent an intestacy has resulted and that the provisions in said codicil contained in favor of the San Diego County Hospital as residuary legatee of said decedent do not in law constitute a bequest or devise to the State or any state institution for the use or benefit of the State or any State Institution within the exception from the restrictions of said Section 1313 of the Civil Code of California.'' It is then provided in the decree the method to be employed by the trustee to determine whether or not the residuary bequest to the San Diego County Hospital does in fact constitute a disposition in excess of one-third the value of the distributable estate and then declares that ''as to the amount of such excess an intestacy shall be deemed to exist and such excess shall be deemed to belong to the heirs at law of said Susan Mary Gowan Johnston, deceased, and be disbursed and paid by said trustee in the following manner:'' (The part

thereof to be distributed to each heir of decedent then being set forth.)

Thereafter the people of the state of California and the county of San Diego filed this appeal "from that part of the Decree of Distribution entered herein on the 18th day of July, 1924, which adjudges and decrees that the County Hospital of the County of San Diego is not a State Institution and that the legacy bequeathed to said Institution by the codicil to the Will of said decedent fails in so far as said legacy exceeds one-third of the distributable estate of said decedent, being that portion of the decree contained in paragraphs six and seven thereof."

Section 1313 of the Civil Code provides: "No estate, real or personal, shall be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, except the same be done by will duly executed at least thirty days before the decease of the testator; and if so made at least thirty days prior to such death, such devise or legacy and each of them shall be valid; provided, that no such devise or bequest shall collectively exceed one-third of the estate of the testator, leaving legal heirs, and in such case a *pro rata* deduction from such devises or bequests shall be made so as to reduce the aggregate thereof to one-third of such estate; and all dispositions of property made contrary hereto shall be void, and go to the residuary legatee or devisee, next of kin, or heirs, according to law; and provided, further, that bequests and devises to the state, or to any state institution, or for the use or benefit of the state or any state institution, or to any educational institution which is exempt from taxation under section one *a* of article thirteen of the constitution of the state of California, or for the use or benefit of any such educational institution, are excepted from the restrictions of this section; provided, however, that nothing in this section contained shall apply to bequests or devises made by will executed at least six months prior to the death of a testator who leaves no parent, husband, wife, child or grandchild, or when all of such heirs shall have by writing, executed at least six months prior to his death, waived the restriction contained herein."

Appellants state that "By this appeal two questions are presented for decision:

"1. The husband having waived the restrictions imposed by Section 1313 of the Civil Code, at the time of the execution of the original will, was it necessary to the validity of the change of charitable beneficiary, as made by the codicil, that he again waive said restrictions?

"2. Was the bequest contained in the codicil, one to a state institution or for the use or benefit of the state?"

Under the first contention it is urged by the appellants that "The written consent of Mr. Johnston to the original will, containing a residuary bequest to a corporation for charitable uses, was a consent to bequeath the residue of the estate in trust for charitable purposes and a waiver of the restrictions imposed by Sec. 1313 of the Civil Code. . . .

"The waiver was written on the will itself just below the attestation of the witnesses to the will and was general in terms. You cannot read into the waiver, any condition or limitation. The only logical construction of the waiver is that the husband consented to the making of a will whereby more than one-third of the estate would become a trust fund for charitable uses. This consent, having been given more than six months prior to the death of the testator [testatrix?] was sufficient to validate any bequest contained in the will and any thereafter provided for."

[1] In our opinion a reading of the consent or so-called "waiver" makes clear that the contention is without merit. It signifies merely a consent to the will as then written and in no reasonable sense can it be held to constitute a general waiver of the rights and benefits secured to heirs by the provisions of section 1313 of the Civil Code. As stated by the respondent, "Taking into consideration the language used in the consent in question, the construction placed on Sec. 1313 by the Courts, and upon similar statutes in other States, the only logical conclusion to be reached is that the consent given by Mr. Johnston to the Will of his wife was given to the particular Will which reserved a benefit to Mr. Johnston, and that consent cannot be construed as a waiver of the provisions of C. C. 1313 as to any different disposition of his wife's property, nor as a consent to the codicil here, which substantially changed the disposition of the property and reserved no benefit to Mr. Johnston."

[2] We quote from appellants brief touching their second contention: "The bequest to the County Hospital . . . was

a valid bequest for the reason that the County Hospital is a state institution and the trust created was for the benefit of the state, and for the further reason that the legislature has authorized counties to accept bequests and hold and use the same for the purposes prescribed by the terms of the bequest.'' Hereunder, it is urged that one of the primary duties of a state is to care for the indigent sick and that the legislature has, by the various county government acts and other measures, authorized, if not compelled, the several counties to assume their proper share of this public duty. Again quoting from appellants' brief: ''It thus appears that the state has continuously undertaken to provide for the care of the indigent sick of the state. At times it has done so by delegating to the counties the duty of providing hospitals and caring for the poor without supervision by any other state agency, but since 1903 this delegated duty has also been supervised and controlled by a state agency and by the Governor of the State. The power to build County hospitals and almshouses cannot now be exercised by the Board of Supervisors without the sanction of the State Board of Charities.

''Legislative control over institutions for the care of indigent sick as expressed by the provisions of the above mentioned enactments fixes the character of such institutions as state institutions maintained for the purpose of carrying on the work of the state, . . . ''

In McQuillin on Municipal Corporations, volume 5, section 2458, the rule is thus stated: ''The legislature may, in the absence of constitutional restriction, empower municipalities to establish municipal hospitals, dispensaries, asylums, poor houses and other charitable institutions to care for the sick, dependent, neglected, destitute, insane or poor, and to prescribe regulations for the government thereof, and such power is usually conferred. . . . The fact that a municipal asylum is subject to legislative control does not make it a state institution.'' No reason suggests itself why a different principle should be applied to similar county institutions.

The case of *Chalfant* v. *State*, 37 Ohio St. 60, 61, involved the question whether or not Longview Asylum, founded by Hamilton County under acts of the general assembly, was a state institution within the meaning of an article of the Ohio state constitution, which required the

197 Cal.—3

trustees of such institutions to be appointed by the Governor. The court declared, in part: ''The constitutional provision evidently refers to institutions belonging to and owned by the state, and not to such as might belong to particular municipalities or counties, though established under the legislative authority of the state. . . .

''The grounds upon which it is claimed to be a *state* institution are that the state has contributed to its support; that it is governed by the laws of the state; and, moreover, that it is made the duty of the state, by the Constitution, to foster and support institutions for the benefit of the insane, blind, deaf and dumb.

''While it is true this duty is imposed on the state, yet, it is left to the wisdom of the general assembly to determine the character of the institutions through which the benefit is to be conferred.

''There is no constitutional inhibition against authorizing a county, or the municipalities of the state establishing such institutions. All institutions for these purposes are not required to be state institutions; but when state institutions are created for the purpose, the constitution requires the trustees to be appointed in the mode therein provided.

''The provision has no application to institutions for these purposes founded by individuals, or particular localities, under authority granted for the purpose. Nor do such institutions become *state* institutions from the fact that they are subject to legislative government and control. All institutions and corporations created for public purposes are subject to be thus governed.

''Nor is the character of the institution affected by the fact that the legislature has contributed to its support. The institution was created to administer in a particular county a public charity, which the state is enjoined to foster, and there is no inhibition against the general assembly giving it such aid as it may deem just.''

This definition of ''state institution'' seems to have been approved in *Estate of Houk*, 186 Cal. 643, 646 [200 Pac. 417, 418], wherein, in passing upon the question whether or not a bequest to a municipality for the construction and maintenance of a pleasure pier was a charitable bequest within the meaning of section 1313, the court declared: ''In *Chalfant* v. *State*, 37 Ohio St. 60, state institutions are

defined as institutions belonging to and owned by the state and not such as might belong to particular municipalities."

Moreover, it is significant to note that section 2145 of the Political Code enumerates the various state hospitals. Obviously, if county hospitals were intended to be state institutions they would appear or be referred to in this section of the Political Code.

Nor do we think the residuary bequest in the instant case to the County Hospital of San Diego County comes within the exception contained in the phrase "for the use or benefit of the state or any state institution" found in section 1313, for, as said in *Estate of Houk, supra,* "It cannot be disputed that anything in the way of municipal improvement which benefits the municipality benefits the state as a whole. This would be the case were the beneficiary of that aid a private hospital, or charity of any kind which helped to carry the public burden, but that is obviously not what is meant by this provision of section 1313. When it is read with its context it will be apparent that the words 'state' and 'state institution' are to be read in the clause referred to precisely in the sense used in the preceding clause as referring to bequests directly to the state or in trust for the benefit of the state; directly to, or in trust for the benefit of, any state institution."

Furthermore, as suggested in *Estate of Houk, supra,* if the legislature had intended to include municipal or county institutions within the exceptions to the provisions of section 1313 of the Civil Code, it would have expressly so provided.

As indicated, we conclude that the bequest here to the County Hospital of San Diego County is not a bequest "to the state, or to any state institution, or for the use or benefit of the state or any state institution," so as to come within the exception to the provisions of section 1313 of the Civil Code.

The decree of distribution is affirmed.

Waste, J., Seawell, J., Houser, J., *pro tem.,* Shenk, J., Richards, J., and Lennon, J., concurred.

Rehearing denied.

All the Justices concurred.